## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHARLES PICARELLA, JR.,** | : | **CIVIL NO. 1:16-CV-501** |
| | : | |
| **Plaintiff** | : | **(Chief Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **KRISTA BROUSE,** *et al.*, | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM

Plaintiff Charles Picarella ("Picarella"), an inmate formerly housed at the Northumberland County Prison, Sunbury, Pennsylvania, commenced this action pursuant to 42 U.S.C. § 1983. (Doc. 1). The matter is proceeding *via* an amended complaint (Doc. 23), wherein Picarella names the following defendants: Krista Brouse, James Smink, Brian Wheary, and the County of Northumberland. Before the court is defendants' motion (Doc. 24) to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the motion will be granted in part and denied in part, and Picarella will be afforded the opportunity to file a second amended complaint.

## I.   Allegations of the Amended Complaint

Picarella was housed at the Northumberland County Prison from approximately June 23, 2014 through December 10, 2014. (Doc. 23, ¶ 14). From November 3, 2014 through December 10, 2014, he was assigned to cell thirty-nine in the left wing of the prison. (Id. at ¶ 15).

During his incarceration, Picarella alleges that he "create[d] pen and ink drawings as a creative outlet, form of expression, and form of speech." (<u>Id.</u> at ¶ 16). Picarella displayed the drawings in his cell, on his cell door, and on the walls adjacent to his cell. (<u>Id.</u> at ¶ 17). He asserts that the drawings did not obstruct the view into his cell. (<u>Id.</u> at ¶ 18). Picarella further alleges that he gave drawings to fellow inmates and prison staff, and "trade[d]" the drawings with fellow inmates and prison staff for various commodities. (<u>Id.</u> at ¶¶ 19-20).

On November 16, 2014, while Picarella was sleeping, defendant Brouse allegedly confiscated ten of his drawings. (<u>Id.</u> at ¶¶ 21-22). Later that afternoon, Picarella asserts that fellow inmates informed him that defendant Brouse removed the drawings. (<u>Id.</u> at ¶ 24). Picarella claims that he was not provided any official notice of the intended seizure of his drawings. (<u>Id.</u> at ¶ 23). Picarella further alleges that he did not receive any compensation for the taking of his property. (<u>Id.</u> at ¶ 25).

Picarella alleges that defendants' actions violated his rights under the United States and Pennsylvania Constitutions. (<u>Id.</u> at ¶¶ 29-30, 32-37).

## II.   <u>**Standard of Review**</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." <u>Kanter v. Barella</u>, 489 F.3d 170, 177 (3d Cir. 2007)

(quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).  Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case."  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests."  Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court must conduct a three-step inquiry.  See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010).  In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'"  Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)).  Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded.  Id.; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief."  Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level").  A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw

3

the reasonable inference that the defendant is liable for the misconduct alleged."

Iqbal, 556 U.S. at 678.

## III.   Discussion

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials.  See 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

Id.; see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  West v. Atkins, 487 U.S. 42, 48 (1988).

### A.     First Amendment

Picarella asserts that the confiscation of artwork violated his First Amendment right to freedom of speech and expression.  (Doc. 23, ¶ 32).  The First Amendment to the Constitution of the United States, made applicable to the States by the Fourteenth Amendment, Cantwell v. Connecticut, 310 U.S. 296, 303, 60 S.Ct. 900, 84 L.Ed. 1213 (1940), offers protection for a wide variety of expressive activities. See U.S. CONST. amend I.  These rights are lessened, but not extinguished in the prison context, where legitimate penological interests must be considered in

4

assessing the constitutionality of official conduct.  See Turner v. Safley, 482 U.S. 78, 89 (1987).

For purposes of this memorandum, the court will assume that Picarella's right to possess artwork is entitled to Constitutional protection.  Once a protectable First Amendment interest has been demonstrated, an inmate may show that a prison regulation or practice violates his Constitutional rights by demonstrating that it violated the "reasonableness test" set forth in Turner, 482 U.S. at 89, and O'Lone v. Shabazz, 482 U.S. 342, 349 (1987).  This test examines the following four factors: (1) whether the regulation or practice in question furthers a legitimate governmental interest unrelated to the suppression of expression; (2) whether there are alternative means of exercising First Amendment rights that remain open to prison inmates; (3) whether the right can be exercised only at the cost of less liberty and safety for guards and other prisoners, and the effect on prison resources in general; and (4) whether an alternative exists which would fully accommodate the prisoners' rights at de minimis cost to valid penological interests.  Thornburgh v. Abbott, 490 U.S. 401, 415-18; Turner, 482 U.S. at 89-91.  "The objective is to determine whether the regulation is reasonable given the prison administrators' penological concerns and the inmate's interest in engaging in the constitutionally protected activity."  DeHart v. Horn, 227 F.3d 47, 59 (3d Cir. 2000).  However, prison administrators need not choose the least restrictive means possible in trying to further penological interests, Thornburgh, 490 U.S. at 411, and it is the burden of the plaintiff to disprove the validity of a prison regulation or practice.  Williams v. Morton, 343 F.3d 212, 217 (2003) (citing Overton v. Bazzetta, 539 U.S. 126 (2003)).

5

With respect to the first <u>Turner</u> factor, defendants assert the confiscation of Picarella's artwork was rationally related to legitimate security interests at the Northumberland County Prison. (Doc. 25 at 3-4). Picarella acknowledges that he placed the drawings on his cell door and on the walls adjacent to his cell, though he claims the drawings did not obstruct the view into his cell. (Doc. 23, ¶¶ 17-18). He further alleges that he traded his drawings with other prisoners and staff members for various commodities. (<u>Id.</u> at ¶ 20). Defendants contend that Picarella's actions raise serious security concerns because prison officials must be able to see through cell doors, and the obstruction of that view could jeopardize the safety of inmates and staff. (Doc. 25 at 4). Defendants further contend that bartering of any kind is not permitting within the prison. (<u>Id.</u>) Additionally, defendants state that prison officials had the responsibility to take appropriate action to prevent future security issues. (<u>Id.</u>)

It is well-established that safety and internal security are legitimate goals for prison administrators. <u>Overton</u>, 539 U.S. at 133. Picarella maintains that his drawings did not obstruct the view into his cell, and exchanging goods was "established practice" at the prison. (Doc. 23, ¶¶ 18, 20). At this procedural juncture, viewing the facts in the light most favorable to the Picarella, he has alleged facts sufficient to infer that the confiscation of his artwork may not have been rationally related to legitimate penological interests concerning institutional security.

The second <u>Turner</u> factor requires the court to assess whether alternative means exist for Picarella to express the asserted right. "'[T]he right' in question must be viewed sensibly and expansively." <u>Thornburgh</u>, 490 U.S. at 418. Picarella does not allege that he has no alternative means of expression. Indeed, he does not allege that his art supplies were confiscated or that he was denied any art supplies. Picarella instead complains that his drawings were confiscated. The amended complaint is devoid of any allegations that Picarella was prevented from artistically expressing himself. There appear to be alternative means of artistic expression available to Picarella, and the second <u>Turner</u> factor weighs slightly in favor of defendants.

The third <u>Turner</u> factor requires consideration of "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." <u>Turner</u>, 482 U.S. at 90. Defendants contend that accommodating Picarella's asserted right would raise security concerns because prison officials must be able to see through cell doors, bartering is not allowed in the prison setting, and prison officials had the responsibility to take action to prevent future security issues. (Doc. 25 at 4). In the event that Picarella covered his cell door with artwork, the safety of the guards and inmates certainly could have been compromised. However, as stated above, Picarella alleges that the drawings did not obstruct the view into his cell. Picarella has alleged sufficient facts to infer that accommodating his asserted right would not pose security and safety concerns for guards and inmates. Therefore, the court finds that the third <u>Turner</u> factor weighs in favor of Picarella.

As to the final <u>Turner</u> factor, "if an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at a *de minimis* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard." <u>Turner</u>, 482 U.S. at 91. "The absence of ready alternatives is evidence of the reasonableness of a prison regulation." <u>Id.</u> at 90. Picarella has not identified any alternative to the challenged conduct. Thus, the fourth <u>Turner</u> factor weighs in favor of defendants.

Based on the foregoing, and considering the overall reasonableness of the challenged action pursuant to <u>Turner</u>, Picarella's allegations are sufficient to state a First Amendment claim. Consequently, the court will deny defendants' motion to dismiss this claim.

**B.    Fifth Amendment**

The Fifth Amendment provides, *inter alia*, that no person "shall be deprived of life, liberty, or property without due process of law." U.S. CONST. amend. V. However, "the due process clause under the Fifth Amendment only protects against federal governmental action and does not limit the actions of state officials." <u>Caldwell v. Beard</u>, 324 F. App'x 186, 189 (3d Cir. 2009); <u>Postie v. Frederick</u>, 2015 WL 1219263, *4 (M.D. Pa. 2015). Picarella sets forth claims against county officials pursuant to 42 U.S.C. § 1983. (Doc. 23). The named defendants are employees of the Northumberland County Prison, and the County of Northumberland itself. Picarella does not set forth any allegations against the federal government or federal officials. Because the due process clause of the Fifth Amendment only

applies to federal officials, Picarella cannot maintain a Fifth Amendment claim against the defendants and this claim will be dismissed.

### C.    Fourteenth Amendment

Picarella asserts liability for the confiscation of his personal property.  (Doc. 23 ¶ 33).  The Due Process Clause of the Fourteenth Amendment guarantees that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law."  U.S. CONST. amend. XIV.  Ordinarily, the concept of "due process" requires some type of hearing before the state can deprive a person of a protected interest.  Zinermon v. Burch, 494 U.S. 113, 126 (1990) (collecting cases).  However, in cases of random and unauthorized deprivations of property the State cannot predict when the loss will occur and, therefore, is unable to provide a meaningful hearing before the deprivation takes place.  The Supreme Court determined that, with respect to negligent, random and unauthorized acts by state actors that result in the loss of a protected interest, a plaintiff does not suffer a violation of procedural due process if he or she has an adequate post-deprivation remedy.  Parratt v. Taylor, 451 U.S. 527 (1981).  The Supreme Court subsequently extended the rule in Parratt to apply to intentional acts by state actors.  Hudson v. Palmer, 468 U.S. 517 (1984); see also Barr v. Knauer, 321 F. App'x 101, 103 (3d Cir. 2009).

The Third Circuit Court of Appeals has held that the DOC's grievance procedure provides an adequate post-deprivation remedy, see e.g., Tillman v. Lebanon County Corr. Fac., 221 F.3d 410, 422 (3d Cir. 2000), and that the existence of this post-deprivation remedy forecloses any due process claim, Austin v. Lehman, 893 F. Supp. 448, 454 (E.D. Pa. 1995), even if an inmate is dissatisfied with the result

of the process.  Iseley v. Horn, 1996 WL 510090, at * 6 (E.D. Pa. 1996).  "As [the

inmate plaintiff] admits to having used the grievance procedure to attempt the

return of his [property], he had access to an adequate post-deprivation remedy and

even if there had been a violation of his liberty interest he was not denied the right

to due process of law."  Brooks v. DiGuglielmo, 2008 WL 5187529, * 6 (E.D. Pa. 2008)

(footnote omitted).  See also Monroe v. Beard, 536 F.3d 198, 210 (3d Cir. 2008)

(stating, "[b]ecause prisons are constitutionally required to afford inmates only a

post-deprivation remedy, we agree that the defendants' failure to give the inmates

prior notice of their intended seizure of their materials did not violate the plaintiffs'

Due Process rights").

Monroe dealt with the intentional confiscation of inmate property pursuant

to official prison policy.  Id.  In Monroe, the inmates objected to a Department of

Corrections policy that allowed the confiscation of UCC-related material and forms.

Id.  The Third Circuit held that the failure to give the inmates prior notice of the

seizure of these materials did not violate their due process rights.  Id.  It also found

that the Department afforded the inmates a meaningful post-deprivation remedy in

the form of the inmate grievance system and a special process for objecting to the

seizures.  Id.  The Court stated: "Although the plaintiffs allege that the defendants

have not adhered to their own procedure, they have not shown that this post-

deprivation procedure was not meaningful."  Id.  Likewise, in Tillman, the Third

Circuit held that the plaintiff inmate had an adequate post-deprivation remedy in

the form of the prison grievance program.  Tillman, 221 F.3d at 422.

Similarly, in this case, the prison officials were not obligated to give Picarella prior notice of the seizure of his artwork.  Even if the prison officials' actions were not justified, Picarella was provided with a meaningful post-deprivation remedy with regard to the confiscated material.  He asserts that he availed himself of the remedy by filing a grievance concerning the confiscated drawings.  (Doc. 23, ¶ 31).  Consequently, Picarella's Fourteenth Amendment claim regarding his confiscated property fails as a matter of law to state a constitutional violation as required under 42 U.S.C. § 1983.  Accordingly, defendants' motion to dismiss this claim will be granted.

### D.   Equal Protection

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike.  U.S. CONST. amend. XIV; City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985) (citing Plyer v. Doe, 457 U.S. 202, 216 (1982)).  To state an equal protection claim, a plaintiff must allege that: (1) he or she was a member of a protected class, (2) he or she was treated differently from similarly situated persons outside of his or her protected class, and (3) the resultant discrimination was purposeful or intentional rather than incidental.  Tillman, 221 F.3d at 423-24.

An equal protection claim can also be brought by a "class of one," a plaintiff alleging that he has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); Williams, 343 F.3d at 221; see also

Jean-Pierre v. Bureau of Prisons, 497 F. App'x 164, 168 (3d Cir. 2012).  If a distinction between persons does not implicate a suspect or quasi-suspect class, state action will be upheld if it is rationally related to a legitimate state interest.  See Tillman, 221 F.3d at 423.

Picarella seemingly asserts that defendants violated his right to equal protection because he was denied his right to freedom of expression, speech, and due process.  (Doc. 23, ¶¶ 29, 37).  Picarella does not state that he is a member of a protected class.  Indeed, prisoners are not a protected class of individuals.  See Abdul-Akbar v. McKelvie, 239 F.3d 307, 317 (3d Cir. 2001) (stating that prisoners are not a suspect class).  Therefore, Picarella's claim survives only if he has properly stated a violation of his equal protection rights under a class-of-one theory.  To survive under the class-of-one theory, Picarella must allege facts showing that he has been treated differently from similarly situated inmates, that the defendants did so intentionally, and that this difference in treatment bears no rational relation to any legitimate penological interest.  Phillips, 515 F.3d at 243.  When alleging the existence of similarly situated individuals, plaintiffs "cannot use allegations . . . that amount to nothing more than 'conclusory, boilerplate language' to show that he may be entitled to relief," and "bald assertion[s] that other[s] . . . were treated in a dissimilar manner" will not survive dismissal.  Young v. New Sewickley Twp., 160 F. App'x 263, 266 (3d Cir. 2005) (citing Evancho, 423 F.3d at 354-55); see also Twombly, 550 U.S. at 561 (requiring more than a "wholly conclusory statement of claim" to survive a motion to dismiss).  Instead, plaintiffs must identify similarly situated individuals and allege "occasions or circumstances" of differential

treatment.  <u>Young</u>, 160 F. App'x at 266; <u>see</u> <u>also</u> <u>Twombly</u>, 550 U.S. at 563 (requiring

a plaintiff to plead a set of facts consistent with legal allegations in complaint to

survive dismissal).

In the amended complaint, Picarella generally alleges that he was subjected

to discriminatory treatment to which other similarly situated prisoners were not

subjected.  (Doc. 23, ¶ 29).  Picarella identifies no other inmates who were similarly

situated to him that were treated differently by defendants.  The allegations in the

amended complaint are simply "bald assertions" that do not allege "occasions and

circumstances" of differential treatment.  <u>Young</u>, 160 F. App'x at 266.  Because

Picarella has not stated the existence of similarly situated individuals sufficient to

support a class-of-one claim, the equal protection claim will be dismissed.

### E.    Eighth Amendment

The Eighth Amendment protects prison inmates from cruel and unusual

punishment.  <u>See</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994).  However, not all

deficiencies and inadequacies in prison conditions amount to a violation of a

prisoner's constitutional rights.  <u>Rhodes v. Chapman</u>, 452 U.S. 337, 349 (1981).  To

assert an Eighth Amendment conditions of confinement claim, a prisoner must

satisfy both an objective and subjective test.  <u>See</u> <u>Wilson v. Seiter</u>, 501 U.S. 294, 298

(1991).  Specifically, a prisoner must show that the alleged deprivation is

"sufficiently serious" and that he has been deprived of the "minimal civilized

measure of life's necessities."  <u>Farmer</u>, 511 U.S. at 834.  A prisoner must also

demonstrate that "he is incarcerated under conditions posing a substantial risk of

serious harm" and that prison officials possessed a "sufficiently culpable state of mind" and demonstrated "deliberate indifference" to his health or safety.  Id. However, only "extreme deprivations" are sufficient to present a claim for unconstitutional conditions of confinement.  Hudson v. McMillian, 503 U.S. 1, 8-9 (1992).

Picarella alleges that the confiscation of his artwork violated his Eighth Amendment rights.  (Doc. 23, ¶ 36).  As to the objective prong, the court finds that the single incident of removing artwork from Picarella's cell is not sufficiently serious to constitute denial of the minimal civilized measure of life's necessities. See Adderly v. Ferrier, 2010 WL 2640596, at *7 (W.D. Pa. 2010) (allegations of denial of property, clothes, toiletries, legal mail, pillow, mattress, and denial of access to the law library and showers for a period of seven days, fail to state a claim as a matter of law).  As to the subjective prong, Picarella has not alleged that any defendants were deliberately indifferent to his health or safety.

Picarella has failed to allege facts sufficient for the court to conclude that his Eighth Amendment claim should proceed because he has failed to allege that the deprivation alleged was objectively, sufficiently serious, and that any defendant acted with deliberate indifference to an excessive risk to his health and/or safety as required by Farmer.  Consequently, the Eighth Amendment claim will be dismissed.  Picarella will be afforded the opportunity to file a second amended complaint to cure the defects with respect to this claim.

**F.     Claim for Damages under the Pennsylvania Constitution**

Defendants seek dismissal of all claims brought pursuant to the Pennsylvania

Constitution on the basis that there is no private cause of action for damages under

the Pennsylvania Constitution.  (Doc. 25 at 8).  The Third Circuit has observed that

"[n]o Pennsylvania statute establishes, and no Pennsylvania court has recognized, a

private cause of action for damages under the Pennsylvania Constitution."  Pocono

Mountain Charter School v. Pocono Mountain School Dist., 442 F. App'x 681, 687-

688 (3d Cir. 2011) (citing Jones v. City of Phila., 890 A.2d 1188, 1208 (Pa. Commw. Ct.

2006)).  See also Bodnar v. Wagner, 2010 WL 56097, at *7 (M.D. Pa. 2010) (noting

that the Pennsylvania Supreme Court has not ruled on the issue but finding that

caselaw in state and federal courts uniformly holds that "there is no private cause of

action available for seeking monetary damages for violations for the Pennsylvania

constitution").  Accordingly, insofar as Picarella is attempting to raise claims under

the Pennsylvania Constitution for damages, such claims will be dismissed.

**G.     Monell Liability**

Defendants assert that Picarella's amended complaint fails to state a claim

for municipal liability under Monell v. New York City Dep't of Social Services, 436

U.S. 658 (1978).  (Doc. 25 at 8-9).  A municipality may be held liable under § 1983 "if

the governmental body itself 'subjects' a person to a deprivation of constitutional

rights or 'causes' a person 'to be subjected' to such deprivation."  Connick v.

Thompson, 563 U.S. 51, 60 (2011) (quoting Monell, 436 U.S. at 692).  Thus, a plaintiff

seeking to impose constitutional liability on a municipality must meet the difficult

burden of proving that "action pursuant to official municipal policy" caused their

injury. <u>Monell</u>, 436 U.S. at 691, 694. This requires the plaintiff to identify an official or unofficial municipal policy—including "decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law," <u>Connick</u>, 563 U.S. at 61 (citations omitted), and demonstrate that said policy was the "moving force" behind his injury, <u>Berg v. Cty. of Allegheny</u>, 219 F.3d 261, 275-76 (3d Cir. 2000) (quoting <u>Bd. of Cty. Comm'rs v. Brown</u>, 520 U.S. 397, 404 (1997)).

A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train. <u>See</u> <u>Oklahoma City v. Tuttle</u>, 471 U.S. 808, 822-823 (1985) (plurality opinion) (a policy of inadequate training is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in <u>Monell</u>"). The Supreme Court articulated the following with respect to failure to train claims:

> To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." <u>Canton</u>, 489 U.S., at 388, 109 S.Ct. 1197. Only then "can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." <u>Id.</u>, at 389, 109 S.Ct. 1197.
>
> "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." <u>Bryan Cty.</u>, 520 U.S., at 410, 117 S.Ct. 1382. Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program. <u>Id.</u>, at 407, 117 S.Ct. 1382. The city's "policy of inaction" in light of notice that its program will cause constitutional violations "is the functional equivalent of a decision by the city itself to violate the Constitution." <u>Canton</u>, 489 U.S., at 395, 109 S.Ct. 1197 (O'Connor, J., concurring in part and dissenting in part). A less stringent standard of

> fault for a failure-to-train claim "would result in *de facto respondeat superior* liability on municipalities . . . " Id., at 392, 109 S.Ct. 1197; see also Pembaur, *supra*, at 483, 106 S.Ct. 1292 (opinion of Brennan, J.) ("[M]unicipal liability under § 1983 attaches where—and only where— a deliberate choice to follow a course of action is made from among various alternatives by [the relevant] officials . . . ").
>
> A pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train. Bryan Cty., 520 U.S., at 409.

Connick, 563 U.S. at 61-62.

Defendants argue that the amended complaint fails to meet the pleading requirements of the Federal Rules of Civil Procedure, and Picarella "simply asserted that these defendants failed to adequately train their employees so as to prevent the violation of Plaintiff's constitutional rights." (Doc. 25 at 9). The court agrees. Picarella's allegations of municipal liability are purely conclusory. He alleges that defendants violated his constitutional rights by failing to properly train corrections officers. (Doc. 23, ¶¶ 26-28). Picarella has failed to put forth a single allegation where an inmate's constitutional rights have been violated because of a purported lack of training. Picarella's entire allegations are as follows:

26. Defendant Smink failed to effect [sic] Defendant Brouse was properly trained so as to protect Plaintiff's rights.

27. Defendant Wheary failed to effect [sic] Defendants Smink and Brouse were properly trained so as to protect Plaintiff's rights.

28. Defendant County of Northumberland failed to effect [sic] Defendants Wheary, Smink, and Brouse were properly trained so as to protect Plaintiff's rights.

(Doc. 23, ¶¶ 26-28). The amended complaint is inadequate in that it lacks any specificity concerning the particular behavior, time, place, and persons responsible

for any official policy or custom sanctioning the alleged unconstitutional conduct. See Evancho, 423 F.3d at 353.  Consequently, the Monell claim will be dismissed. Picarella will be afforded the opportunity to file a second amended complaint to cure the deficiencies concerning this claim.

### H.   Personal Involvement Claim against Defendants Smink and Wheary

Defendants Smink and Wheary argue that Picarella fails to state a claim against them because they lack personal involvement in the alleged wrongs.  (Doc. 25 at 9).  The court finds merit in this argument.

Individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the operation of *respondeat superior*."  Evancho, 423 F.3d at 353 (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1998)).  "A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . .  Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."  Rode, 845 F.2d at 1207-08; see also, Rizzo v. Goode, 423 U.S. 362 (1976); Atkinson v. Taylor, 316 F.3d 257 (3d Cir. 2003).  Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of conduct, time, place, and person responsible.  Evancho, 423 F.3d at 354; Rode, 845 F.2d at 1207-08.  Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement.  Rode, 845 F.2d at 1208.

18

There are simply no allegations that defendants Smink and Wheary were involved in the alleged confiscation of Picarella's property.  The only claims against these defendants pertain to their alleged failure to train prison officials.  (Doc. 23, ¶¶ 26-27).  Consequently, defendants Smink and Wheary are entitled to dismissal of the claims against them based on their lack of personal involvement in the alleged denial of Picarella's constitutional rights.  Picarella will be afforded the opportunity to cure the deficiencies of this claim.

## I.    Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Pearson v. Callahan, 555 U.S. 223, 231 (2009) (internal quotation marks omitted).  "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  Pearson, 555 U.S. at 231.  It "provides ample protection to all but the plainly incompetent or those who knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 341 (1986).  "Thus, so long as an official reasonably believes that his conduct complies with the law, qualified immunity will shield that official from liability."  Sharp v. Johnson, 669 F.3d 144, 159 (3d Cir. 2012) (citing Pearson, 555 U.S. at 244).  Although qualified immunity is generally a question of law that should be considered at the earliest possible stage of

proceedings, a genuine dispute of material fact may preclude summary judgment on qualified immunity.  Giles v. Kearney, 571 F.3d 318, 325-26 (3d Cir. 2009).

A qualified immunity determination involves a two-pronged inquiry: (1) whether a constitutional or federal right has been violated; and (2) whether that right was "clearly established." Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part by Pearson, 555 U.S. at 236 (permitting federal courts to exercise discretion in deciding which of the two Saucier prongs should be addressed first).  Picarella has sufficiently pled a violation of a constitutional right.  The court finds that any decision on qualified immunity would be premature, and therefore, the court will deny the motion to dismiss on the grounds of a qualified immunity defense.  The denial, however, will be without prejudice.

### J.      Conversion Claim

Picarella also contends that defendant Brouse committed the tort of conversion by interfering with his right to possess his personal property. Specifically, Picarella claims that defendant Brouse seized his property for her own use.  (Doc. 23, ¶ 35).  Conversion is "an act of willful interference with the dominion or control over a chattel done without lawful justification, by which any person entitled to the chattel is deprived of its use and possession." Baram v. Farugia, 606 F.2d 42, 43 (3d Cir. 1979).  With respect to this claim, the issue is whether defendant Brouse wrongfully exercised dominion or control over Picarella's property. Viewing the facts in the light most favorable to Picarella, it is not clear whether defendant Brouse acted wrongfully.  Consequently, the motion to dismiss the conversion claim will be denied.

**IV.**   **Leave to Amend**

When a complaint fails to present a *prima facie* case of liability, district courts must generally grant leave to amend before dismissing the complaint.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000).  Specifically, the Third Circuit Court of Appeals has admonished that when a complaint is subject to dismissal for failure to state a claim, courts should liberally grant leave to amend "unless such an amendment would be inequitable or futile." Phillips, 515 F.3d at 245 (citing Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004)).  For the reasons set forth above, the court concludes that curative amendment would be futile with respect to the Fifth and Fourteenth Amendment claims, and any claims pursuant to the Pennsylvania Constitution. However, Picarella will be afforded an opportunity to amend his Eighth Amendment conditions of confinement claim and his Monell claim.

**V.**   **Conclusion**

For the reasons set forth above, the motion (Doc. 24) to dismiss will be granted in part and denied in part.  An appropriate order will issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:      March 2, 2017