# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHARLES PICARELLA, JR.,** | : | **CIVIL NO. 1:16-CV-501** |
| | : | |
| Plaintiff | : | (Chief Judge Conner) |
| | : | |
| v. | : | |
| | : | |
| **KRISTA BROUSE,** *et al.*, | : | |
| | : | |
| Defendants | : | |

## MEMORANDUM

Plaintiff Charles Picarella ("Picarella"), an inmate formerly housed at the Northumberland County Prison, Sunbury, Pennsylvania, commenced this action pursuant to 42 U.S.C. § 1983. (Doc. 1). The matter is proceeding *via* a second amended complaint (Doc. 35), wherein Picarella names the following defendants: Krista Brouse, James Smink, Brian Wheary, and the County of Northumberland. Before the court is defendants' motion (Doc. 36) to dismiss the second amended complaint in part. For the reasons set forth below, the court will grant the motion.

## I. Allegations of the Second Amended Complaint

Picarella was housed at the Northumberland County Prison from approximately June 23, 2014 through December 10, 2014. (Doc. 35 ¶ 19). From November 3, 2014 through December 10, 2014, he was assigned to cell thirty-nine in the left wing of the prison. (Id. at ¶ 20).

During his incarceration, Picarella alleges that he "create[d] pen and ink drawings as a creative outlet, form of expression, and form of speech." (Id. at ¶ 21).

Picarella displayed the drawings in his cell, on his cell door, and on the walls adjacent to his cell. (Id. at ¶ 22). He asserts that the drawings did not obstruct the view into his cell. (Id. at ¶ 23). Picarella further alleges that he gave drawings to fellow inmates and prison staff, and "trade[d]" the drawings with fellow inmates and prison staff for various commodities. (Id. at ¶¶ 24-25).

On November 16, 2014, while Picarella was sleeping, defendant Brouse allegedly confiscated ten of his drawings. (Id. at ¶¶ 26-27). Later that afternoon, Picarella asserts that fellow inmates informed him that defendant Brouse removed the drawings. (Id. at ¶ 30). Picarella claims that he was not provided any official notice of the intended seizure of his drawings. (Id. at ¶¶ 28-29). Picarella further alleges that he did not receive any compensation for the taking of his property. (Id. at ¶ 31).

On November 22, 2014, Picarella filed a grievance regarding the confiscation of his artwork. (Id. at ¶ 32; Doc. 35 at 9). After Picarella filed the grievance, defendant Brouse informed him that she did not approve of the drawings, and she would confiscate any new drawings and place him in the restricted housing unit if he created new drawings. (Doc. 35 ¶ 33).

On November 29, 2014, defendant Smink denied Picarella's grievance because the drawings were considered pornography. (Doc. 35 ¶¶ 34-36; Doc. 35 at 9). On December 2, 2014, Picarella appealed the denial of his grievance. (Doc. 35 ¶ 38; Doc. 35 at 11). Picarella claims that defendant Wheary failed to respond to his grievance appeal. (Doc. 35 ¶¶ 39-40).

Picarella alleges that defendants' actions violated his rights under the United States and Pennsylvania Constitutions. (Id. at ¶¶ 41-46, 48-51).

## II. Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)). Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests." Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court must conduct a three-step inquiry. See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal

3

elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded. Id.; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

### III. Discussion

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials. See 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

Id.; see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

4

### A. Fourteenth Amendment Claim

Picarella asserts liability for the confiscation of his personal property. (Doc. 35 ¶ 49). The Due Process Clause of the Fourteenth Amendment guarantees that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV. Ordinarily, the concept of "due process" requires some type of hearing before the state can deprive a person of a protected interest. Zinermon v. Burch, 494 U.S. 113, 126 (1990) (collecting cases). However, in cases of random and unauthorized deprivations of property the State cannot predict when the loss will occur and, therefore, is unable to provide a meaningful hearing before the deprivation takes place. The Supreme Court determined that, with respect to negligent, random and unauthorized acts by state actors that result in the loss of a protected interest, a plaintiff does not suffer a violation of procedural due process if he or she has an adequate post-deprivation remedy. Parratt v. Taylor, 451 U.S. 527 (1981). The Supreme Court subsequently extended the rule in Parratt to apply to intentional acts by state actors. Hudson v. Palmer, 468 U.S. 517 (1984); see also Barr v. Knauer, 321 F. App'x 101, 103 (3d Cir. 2009).

The Third Circuit Court of Appeals has held that the DOC's grievance procedure provides an adequate post-deprivation remedy, see e.g., Tillman v. Lebanon County Corr. Fac., 221 F.3d 410, 422 (3d Cir. 2000), and that the existence of this post-deprivation remedy forecloses any due process claim, Austin v. Lehman, 893 F. Supp. 448, 454 (E.D. Pa. 1995), even if an inmate is dissatisfied with the result of the process. Iseley v. Horn, 1996 WL 510090, at * 6 (E.D. Pa. 1996). "As [the inmate plaintiff] admits to having used the grievance procedure to attempt the

5

return of his [property], he had access to an adequate post-deprivation remedy and even if there had been a violation of his liberty interest he was not denied the right to due process of law." Brooks v. DiGuglielmo, 2008 WL 5187529, * 6 (E.D. Pa. 2008) (footnote omitted). See also Monroe v. Beard, 536 F.3d 198, 210 (3d Cir. 2008) (stating, "[b]ecause prisons are constitutionally required to afford inmates only a post-deprivation remedy, we agree that the defendants' failure to give the inmates prior notice of their intended seizure of their materials did not violate the plaintiffs' Due Process rights").

Monroe dealt with the intentional confiscation of inmate property pursuant to official prison policy. Id. In Monroe, the inmates objected to a Department of Corrections policy that allowed the confiscation of UCC-related material and forms. Id. The Third Circuit held that the failure to give the inmates prior notice of the seizure of these materials did not violate their due process rights. Id. It also found that the Department afforded the inmates a meaningful post-deprivation remedy in the form of the inmate grievance system and a special process for objecting to the seizures. Id. The Court stated: "Although the plaintiffs allege that the defendants have not adhered to their own procedure, they have not shown that this post-deprivation procedure was not meaningful." Id. Likewise, in Tillman, the Third Circuit held that the plaintiff inmate had an adequate post-deprivation remedy in the form of the prison grievance program. Tillman, 221 F.3d at 422. Additionally, "[t]he failure of a prison official to provide a favorable response to an inmate grievance is not a federal constitutional violation." Gordon v. Vaughn, 1999 WL

305240, *2 (E.D. Pa. May 12, 1999) (citing Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994), cert. denied, 514 U.S. 1022, 115 S.Ct. 1371, 131 L.Ed.2d 227 (1995)).

Similarly, in the case at bar, the prison officials were not obligated to give Picarella prior notice of the seizure of his artwork. Even if the prison officials' actions were not justified, Picarella was provided with a meaningful post-deprivation remedy with regard to the confiscated material. Picarella acknowledges that he participated in a meaningful post-deprivation grievance procedure; however, he complains that his grievance was denied. (Doc. 35 ¶ 32; Doc. 35 at 9). Picarella's "mere dissatisfaction with the outcome [of the grievance procedure] . . . does not equate to a denial of due process." Fennell v. N.D. Goss, 2016 WL 453511, at *4 (Pa. Cmwlth. 2016) (quotation marks omitted). Moreover, Picarella has another post-deprivation remedy available, namely a state conversion action. See Crosby v. Piazza, 2012 WL 641938, *3 (3d Cir. 2012) (holding that to the extent an inmate "is dissatisfied with the outcome of the administrative process, he may still file a state court tort action"). As discussed, if a meaningful post-deprivation grievance procedure is available, regardless of whether the result of this grievance procedure is favorable to the plaintiff, the plaintiff will not have a claim for a violation of the Due Process Clause of the Fourteenth Amendment. Consequently, Picarella's Fourteenth Amendment claim regarding his confiscated property fails as a matter of law to state a constitutional violation as required under 42 U.S.C. § 1983. Accordingly, defendants' motion to dismiss this claim will be granted.

### B.  Equal Protection Claim

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike.  U.S. CONST. amend. XIV; City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985) (citing Plyer v. Doe, 457 U.S. 202, 216 (1982)).  To state an equal protection claim, a plaintiff must allege that: (1) he or she was a member of a protected class, (2) he or she was treated differently from similarly situated persons outside of his or her protected class, and (3) the resultant discrimination was purposeful or intentional rather than incidental.  Tillman, 221 F.3d at 423-24.

An equal protection claim can also be brought by a "class of one," a plaintiff alleging that he has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); Williams, 343 F.3d at 221; see also Jean-Pierre v. Bureau of Prisons, 497 F. App'x 164, 168 (3d Cir. 2012).  If a distinction between persons does not implicate a suspect or quasi-suspect class, state action will be upheld if it is rationally related to a legitimate state interest.  See Tillman, 221 F.3d at 423.

Picarella asserts that defendants violated his right to equal protection because he was denied his right to freedom of expression, speech, and due process.  (Doc. 35 ¶¶ 42-46, 49).  Picarella does not allege that he is a member of a protected class, and prisoners are not a protected class of individuals.  See Abdul-Akbar v. McKelvie, 239 F.3d 307, 317 (3d Cir. 2001) (stating that prisoners are not a suspect

class).  Therefore, Picarella's claim survives only if he has properly stated a violation of his equal protection rights under a class-of-one theory.  To survive under the class-of-one theory, Picarella must allege facts showing that he has been treated differently from similarly situated inmates, that the defendants did so intentionally, and that this difference in treatment bears no rational relation to any legitimate penological interest.  Phillips, 515 F.3d at 243.  When alleging the existence of similarly situated individuals, plaintiffs "cannot use allegations . . . that amount to nothing more than 'conclusory, boilerplate language' to show that he may be entitled to relief," and "bald assertion[s] that other[s] . . . were treated in a dissimilar manner" will not survive dismissal.  Young v. New Sewickley Twp., 160 F. App'x 263, 266 (3d Cir. 2005) (citing Evancho, 423 F.3d at 354-55); see also Twombly, 550 U.S. at 561 (requiring more than a "wholly conclusory statement of claim" to survive a motion to dismiss).  Instead, plaintiffs must identify similarly situated individuals and allege "occasions or circumstances" of differential treatment.  Young, 160 F. App'x at 266; see also Twombly, 550 U.S. at 563 (requiring a plaintiff to plead a set of facts consistent with legal allegations in complaint to survive dismissal).

In the second amended complaint, Picarella alleges that he was subjected to discriminatory treatment to which other similarly situated prisoners were not subjected.  (Doc. 35 ¶¶ 43-44).  Picarella claims that he was similarly situated to "most other prisoners" at the Northumberland County Prison in that he was not restricted from possessing drawing materials and was afforded the same privileges as inmates in the general population.  (Id.)

9

With regard to discretionary decisions in prison, such as the denial of certain privileges, courts in the Third Circuit have noted that it is improbable that prisoners would be similarly situated to one another for equal protection purposes, under any circumstances. See Adams v. McAllister, 798 F. Supp. 242, 246 (M.D. Pa. 1992), aff'd, 972 F.2d 1330 (3d Cir. 1992); Rowe v. Cuyler, 534 F.Supp. 297, 301 (E.D. Pa. 1982), aff'd 696 F.2d 985 (3d Cir. 1982) ("[i]t is difficult to believe that any two prisoners could ever be considered 'similarly situated' for the purpose of judicial review on equal protection grounds of broadly discretionary decisions because such decisions may legitimately be informed by a broad variety of an individual's characteristics"). The allegations in the amended complaint are simply "bald assertions" that do not allege "occasions and circumstances" of differential treatment. Young, 160 F. App'x at 266. Picarella's mere general identification of other prisoners who were not restricted from possessing drawing materials, in the same time frame that he was denied drawing privileges, does not plausibly state a claim that these prisoners were similarly-situated for purposes of an equal protection violation. The decision to remove Picarella's artwork based on its pornographic nature is the type of discretionary decision for which the ability to show similarly-situated inmates is highly improbable. Consequently, the equal protection claim will be dismissed.

### C. Eighth Amendment Claim

The Eighth Amendment protects prison inmates from cruel and unusual punishment. See Farmer v. Brennan, 511 U.S. 825, 832 (1994). However, not all deficiencies and inadequacies in prison conditions amount to a violation of a prisoner's constitutional rights. Rhodes v. Chapman, 452 U.S. 337, 349 (1981). "Lawful incarceration brings about the necessary withdrawal or limitation of many rights." Price v. Johnston, 334 U.S. 266, 285 (1948). To assert an Eighth Amendment conditions of confinement claim, a prisoner must satisfy both an objective and subjective test. See Wilson v. Seiter, 501 U.S. 294, 298 (1991). Specifically, a prisoner must show that the alleged deprivation is "sufficiently serious" and that he has been deprived of the "minimal civilized measure of life's necessities." Farmer, 511 U.S. at 834. A prisoner must also demonstrate that "he is incarcerated under conditions posing a substantial risk of serious harm" and that prison officials possessed a "sufficiently culpable state of mind" and demonstrated "deliberate indifference" to his health or safety. Id. However, only "extreme deprivations" are sufficient to present a claim for unconstitutional conditions of confinement. Hudson v. McMillian, 503 U.S. 1, 8-9 (1992).

Picarella alleges that the confiscation of his artwork violated his Eighth Amendment rights. (Doc. 35 ¶ 51). The court finds that the single incident of removing artwork from Picarella's cell is not sufficiently serious to constitute denial of the minimal civilized measure of life's necessities. The removal of artwork asserted by Picarella is clearly insufficient to rise to the level of a constitutional violation. See Inmates of Occoquan v. Barry, 844 F.2d 828, 836 (D. C. Cir. 1988)

("[C]ertain 'deprivations,' such as limited work and educational opportunities, do not even fall within the broad compass of 'punishments' within the meaning of the Constitution."). Picarella has failed to cure the deficiencies identified in the amended complaint with respect this claim. Compare (Doc. 23) with (Doc. 35). The second amended complaint fails to allege facts sufficient for the court to conclude that his Eighth Amendment claim should proceed because he has failed to allege that the deprivation alleged was objectively, sufficiently serious, and that any defendant acted with deliberate indifference to an excessive risk to his health and/or safety as required by Farmer. Consequently, the Eighth Amendment claim will be dismissed.

**D. Claim for Damages under the Pennsylvania Constitution**

Defendants seek dismissal of all claims brought pursuant to the Pennsylvania Constitution on the basis that there is no private cause of action for damages under the Pennsylvania Constitution. (Doc. 37 at 6). The Third Circuit has observed that "[n]o Pennsylvania statute establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the Pennsylvania Constitution." Pocono Mountain Charter School v. Pocono Mountain School Dist., 442 F. App'x 681, 687-688 (3d Cir. 2011) (citing Jones v. City of Phila., 890 A.2d 1188, 1208 (Pa. Commw. Ct. 2006)). See also Bodnar v. Wagner, 2010 WL 56097, at *7 (M.D. Pa. 2010) (noting that the Pennsylvania Supreme Court has not ruled on the issue but finding that caselaw in state and federal courts uniformly holds that "there is no private cause of action available for seeking monetary damages for violations for the Pennsylvania

constitution"). Accordingly, insofar as Picarella is attempting to raise claims under the Pennsylvania Constitution for damages, such claims will be dismissed.

### E. Monell Liability

Defendants assert that Picarella's second amended complaint fails to state a claim for municipal liability under Monell v. New York City Dep't of Social Services, 436 U.S. 658 (1978). (Doc. 37 at 6-7). A municipality may be held liable under § 1983 "if the governmental body itself 'subjects' a person to a deprivation of constitutional rights or 'causes' a person 'to be subjected' to such deprivation." Connick v. Thompson, 563 U.S. 51, 60 (2011) (quoting Monell, 436 U.S. at 692). Thus, a plaintiff seeking to impose constitutional liability on a municipality must meet the difficult burden of proving that "action pursuant to official municipal policy" caused their injury. Monell, 436 U.S. at 691, 694. This requires the plaintiff to identify an official or unofficial municipal policy—including "decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law," Connick, 563 U.S. at 61 (citations omitted), and demonstrate that said policy was the "moving force" behind his injury, Berg v. Cty. of Allegheny, 219 F.3d 261, 275-76 (3d Cir. 2000) (quoting Bd. of Cty. Comm'rs v. Brown, 520 U.S. 397, 404 (1997)).

A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train. See Oklahoma City v. Tuttle, 471 U.S. 808, 822-823 (1985) (plurality opinion) (a policy of inadequate training is "far more nebulous, and a good deal further removed from the constitutional violation, than

13

was the policy in Monell"). The Supreme Court articulated the following with respect to failure to train claims:

> To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." Canton, 489 U.S., at 388, 109 S.Ct. 1197. Only then "can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." Id., at 389, 109 S.Ct. 1197.
>
> "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Bryan Cty., 520 U.S., at 410, 117 S.Ct. 1382. Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program. Id., at 407, 117 S.Ct. 1382. The city's "policy of inaction" in light of notice that its program will cause constitutional violations "is the functional equivalent of a decision by the city itself to violate the Constitution." Canton, 489 U.S., at 395, 109 S.Ct. 1197 (O'Connor, J., concurring in part and dissenting in part). A less stringent standard of fault for a failure-to-train claim "would result in *de facto respondeat superior* liability on municipalities . . . " Id., at 392, 109 S.Ct. 1197; see also Pembaur, *supra*, at 483, 106 S.Ct. 1292 (opinion of Brennan, J.) ("[M]unicipal liability under § 1983 attaches where—and only where— a deliberate choice to follow a course of action is made from among various alternatives by [the relevant] officials . . . ").
>
> A pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train. Bryan Cty., 520 U.S., at 409.

Connick, 563 U.S. at 61-62.

Defendants argue that the second amended complaint fails to meet the pleading requirements of the Federal Rules of Civil Procedure. (Doc. 37 at 6-7). The court agrees. Picarella's allegations of municipal liability are purely conclusory. Picarella alleges that the deprivation of his property "was the result of Defendants Smink, Wheary, and County of Northumberland['s] failure to propose,

14

establish, enact, and implement policy, procedure, or practice to prevent Northumberland County Prison staff from depriving inmates of personal property in violation of their civil rights." (Doc. 35 ¶ 41). Picarella has failed to put forth a single allegation in support of this claim. The second amended complaint is inadequate in that it lacks any specificity concerning the particular behavior, time, place, and persons responsible for any official policy or custom sanctioning the alleged unconstitutional conduct. See Evancho, 423 F.3d at 353. Consequently, the Monell claim will be dismissed.

**F.    Personal Involvement Claim against Defendants Smink and Wheary**

Defendants Smink and Wheary argue that Picarella fails to state a claim against them because they lack personal involvement in the alleged wrongs. (Doc. 37 at 7). The court agrees.

Individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the operation of *respondeat superior*." Evancho, 423 F.3d at 353 (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1998)). "A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode, 845 F.2d at 1207-08; see also, Rizzo v. Goode, 423 U.S. 362 (1976); Atkinson v. Taylor, 316 F.3d 257 (3d Cir. 2003). Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of conduct, time, place, and person responsible. Evancho, 423 F.3d at 354; Rode, 845 F.2d at 1207-08. Alleging a mere hypothesis that an

15

individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. Rode, 845 F.2d at 1208.

The only claims against these defendants pertain to their involvement in the inmate grievance system. (Doc. 35 ¶¶ 34-40). Picarella alleges defendant Smink violated his rights when, in reviewing his official inmate grievance, he failed to afford him the relief he requested, failed to provide him a meaningful opportunity to be heard, and his response was not based on fact. Similarly, he seeks to impose liability on defendant Wheary based upon his alleged failure to respond to the grievance appeal. A prisoner's allegation that prison officials and administrators responded inappropriately, or failed to respond to a prisoner's complaint or an official grievance, does not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct. See Rode, 845 F.2d at 1207-08 (concluding that after-the-fact review of a grievance is insufficient to demonstrate the actual knowledge necessary to establish personal involvement); Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006); see also Croom v. Wagner,

No. 06-1431, 2006 WL 2619794, at *4 (E.D. Pa. Sept. 11, 2006) (holding that neither the filing of a grievance nor an appeal of a grievance is sufficient to impose knowledge of any wrongdoing); Ramos v. Pennsylvania Dept. of Corrections, No. 06-1444, 2006 WL 2129148, at *2 (M.D. Pa. July 27, 2006) (holding that the review and denial of the grievances and subsequent administrative appeal does not establish personal involvement).  Consequently, defendants Smink and Wheary are entitled to dismissal of the claims against them based on their lack of personal involvement in the alleged denial of Picarella's constitutional rights.

### III. Conclusion

Based on the foregoing, the court will grant defendants' motion to dismiss the second amended complaint in part.

A separate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated: February 6, 2018