# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHARLES PICARELLA, JR.,** | : | CIVIL NO. 1:16-CV-501 |
| | : | |
| Plaintiff | : | (Chief Judge Conner) |
| | : | |
| v. | : | |
| | : | |
| **KRISTA BROUSE,** *et al.*, | : | |
| | : | |
| Defendants | : | |

## MEMORANDUM

Plaintiff Charles Picarella ("Picarella"), an inmate formerly housed at the Northumberland County Prison, Sunbury, Pennsylvania, commenced this action pursuant to 42 U.S.C. § 1983. (Doc. 1). The matter is proceeding *via* a second amended complaint. (Doc. 35). The remaining defendant is sergeant Krista Brouse. Before the court is defendant's motion (Doc. 84) for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below, the court will grant the motion.

## I. Allegations of the Second Amended Complaint

Picarella was housed at the Northumberland County Prison from approximately June 23, 2014 through December 10, 2014. (Doc. 35 ¶ 19). From November 3, 2014 through December 10, 2014, he was assigned to cell thirty-nine in the left wing of the prison. (Id. at ¶ 20).

During his incarceration, Picarella alleges that he "create[d] pen and ink drawings as a creative outlet, form of expression, and form of speech." (Id. at ¶ 21). Picarella displayed the drawings in his cell, on his cell door, and on the walls adjacent to his cell. (Id. at ¶ 22). He asserts that the drawings did not obstruct the view into his cell. (Id. at ¶ 23). Picarella further states that he gave drawings to fellow inmates and prison staff, and "trade[d]" the drawings with fellow inmates and prison staff for various commodities. (Id. at ¶¶ 24-25).

On November 16, 2014, while Picarella was sleeping, defendant Brouse allegedly confiscated ten of his drawings. (Id. at ¶¶ 26-27). Later that afternoon, Picarella asserts that fellow inmates informed him that defendant Brouse removed the drawings. (Id. at ¶ 30). Picarella claims that he was not provided any official notice of the intended seizure of his drawings. (Id. at ¶¶ 28-29). Picarella further alleges that he did not receive any compensation for the taking of his property. (Id. at ¶ 31).

On November 22, 2014, Picarella filed a grievance regarding the confiscation of his artwork. (Id. at ¶ 32; Doc. 35, at 9). After Picarella filed the grievance, defendant Brouse informed him that she did not approve of the drawings, and she would confiscate any new drawings and place him in the restricted housing unit if he created new drawings. (Doc. 35 ¶ 33). On November 29, 2014, a lieutenant denied the grievance because the drawings depicted naked women and were considered pornography. (Doc. 35 ¶¶ 34-36; Doc. 35, at 9). On December 2, 2014, Picarella appealed the denial of his grievance. (Doc. 35 ¶ 38; Doc. 35, at 11).

Picarella claims that he did not receive a response to his grievance appeal. (Doc. 35 ¶¶ 39-40).

## II. Legal Standard

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact" and for which a jury trial would be an empty and unnecessary formality. FED. R. CIV. P. 56(a). The burden of proof tasks the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The court is to view the evidence "in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor." Thomas v. Cumberland County, 749 F.3d 217, 222 (3d Cir. 2014). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986). Only if this threshold is met may the cause of action proceed. See Pappas, 331 F. Supp. 2d at 315.

## III  Discussion

### A.  **First Amendment Claim**

Picarella asserts that the confiscation of artwork violated his First Amendment right to freedom of speech and expression. The First Amendment to the Constitution of the United States, made applicable to the states by the Fourteenth Amendment, Cantwell v. Connecticut, 310 U.S. 296, 303, 60 S.Ct. 900, 84

L.Ed. 1213 (1940), offers protection for a wide variety of expressive activities. See U.S. CONST. amend I. These rights are lessened, but not extinguished in the prison context, where legitimate penological interests must be considered in assessing the constitutionality of official conduct. See Turner v. Safley, 482 U.S. 78, 89 (1987).

For purposes of this memorandum, the court will assume that Picarella's right to possess artwork is entitled to Constitutional protection. Once a protectable First Amendment interest has been demonstrated, an inmate may show that a prison regulation or practice violates his Constitutional rights by demonstrating that it violated the "reasonableness test" set forth in Turner, 482 U.S. at 89, and O'Lone v. Shabazz, 482 U.S. 342, 349 (1987). This test examines the following four factors: (1) whether the regulation or practice in question furthers a legitimate governmental interest unrelated to the suppression of expression; (2) whether there are alternative means of exercising First Amendment rights that remain open to prison inmates; (3) whether the right can be exercised only at the cost of less liberty and safety for guards and other prisoners, and the effect on prison resources in general; and (4) whether an alternative exists which would fully accommodate the prisoners' rights at *de minimis* cost to valid penological interests. Thornburgh v. Abbott, 490 U.S. 401, 415-18; Turner, 482 U.S. at 89-91. "The objective is to determine whether the regulation is reasonable given the prison administrators' penological concerns and the inmate's interest in engaging in the constitutionally protected activity." DeHart v. Horn, 227 F.3d 47, 59 (3d Cir. 2000). However, prison administrators need not choose the least restrictive means possible in trying to further penological interests, Thornburgh, 490 U.S. at 411, and it is the burden of

4

the plaintiff to disprove the validity of a prison regulation or practice. Williams v. Morton, 343 F.3d 212, 217 (2003) (citing Overton v. Bazzetta, 539 U.S. 126 (2003)).

With respect to the first Turner factor, defendant asserts that the confiscation of Picarella's artwork was rationally related to legitimate security interests at the Northumberland County Prison. (Doc. 85, at 8-10). It is important to note that prison officials are "accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell v. Wolfish, 441 U.S. 520, 547 (1979).

The Northumberland County Prison Inmate Handbook defines contraband as: "any item not issued or authorized by the facility", and "[u]se of items as barter or payment is also contraband and may be redistributed." (Doc. 84-6, at 5). Additionally, the prison handbook expressly states that "[n]o items shall be attached to the walls, including pictures." (Doc. 84-6, at 10).[1] Pursuant to these prison policies, defendant Brouse confiscated Picarella's drawings. Picarella was informed, on an inmate request slip and grievance form, that the drawings were confiscated because they were prohibited contraband. (Docs. 84-2, 84-3). The confiscation of these items was done in accordance with the prison rules which were directed at maintaining the safety and security of the prison. Picarella

---

[1] As an example of the prison's stance on sexually explicit items, the Northumberland County Prison Inmate Handbook prohibits inmates from receiving any mail that includes photographs of cleavage, bathing suits, or suggestive items intending to sexually arouse, or any forms of pornography, and provides that any such mail items will be destroyed. (Doc. 84-6, at 7).

concedes that he placed the drawings in his cell, on his cell door, and on the walls adjacent to his cell. (Doc. 35, ¶ 22). He further concedes that he traded his drawings with other prisoners and staff members for various commodities. (Id. at ¶¶ 24-25). Picarella also acknowledges that his drawings were confiscated because they depicted nude persons and pornography. (Doc. 84-3; Doc. 84-5, at 19-20, Deposition of Charles Picarella, Jr. ("Picarella Deposition"), 82:24-83:12). At his deposition, Picarella specifically testified that defendant Brouse advised him that "she didn't like the nude drawings and that I was done drawing." (Doc. 84-5, at 19-20, Picarella Deposition, 82:24-83:12). However, Picarella asserts that this is irrelevant to his claim and not all of the drawings depicted nude persons. (Doc. 84-3; Doc. 94). Regardless of whether each confiscated drawing depicted a nude person and was hanging on the wall, it is undisputed that Picarella traded the drawings with other individuals in the prison in direct contravention of the prison rules prohibiting bartering. Bartering in the prison setting has the potential to give one inmate control over another and certainly poses a security risk. It is clear that the prison confiscation policy was rationally related to legitimate security concerns, and the facts reveal that Picarella violated prison policy by hanging the pictures on the prison walls and trading the pictures with other individuals in the prison in exchange for various items. Thus, the first Turner factor weighs in favor of defendant.

The second Turner factor requires the court to assess whether alternative means exist for Picarella to express the asserted right. "'[T]he right' in question must be viewed sensibly and expansively." Thornburgh, 490 U.S. at 418. Picarella

6

has not presented any evidence that he had no alternative means of expression. Indeed, he admits that his art supplies were not confiscated, he continued to draw, and he was never denied any art supplies. (Doc. 84-5, at 21, Picarella Deposition, 94:9-10). Further, defendant Brouse advised Picarella that she would refer him for the opportunity to draw a mural in the prison. (Doc. 84-2). Picarella failed to present any evidence that he was prevented from artistically expressing himself. There were alternative means of artistic expression available to Picarella, and the second Turner factor weighs in favor of defendant.

The third Turner factor requires consideration of "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." Turner, 482 U.S. at 90. Pursuant to the prison handbook, accommodating Picarella's asserted right would raise security concerns because bartering is not allowed in the prison setting and hanging any items on the walls is prohibited. (Doc. 84-6, at 5, 10). Therefore, the court finds that the third Turner factor weighs in favor of defendant.

As to the final Turner factor, "if an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at a *de minimis* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard." Turner, 482 U.S. at 91. "The absence of ready alternatives is evidence of the reasonableness of a prison regulation." Id. at 90. Picarella has not identified any alternative to the challenged conduct. (See Doc. 94, at 12). Thus, the fourth Turner factor weighs in favor of defendant.

In sum, the balancing test required under <u>Turner</u> clearly supports a finding that the confiscation of Picarella's drawings did not violate his First Amendment rights. Thus, defendant is entitled to summary judgment as to this claim.

**B.     Qualified Immunity**

Even if Picarella had stated a colorable claim relating to the confiscation of his artwork, defendant Brouse is nevertheless entitled to qualified immunity from this claim for damages. In order to establish a civil rights claim, Picarella must show the deprivation of a right secured by the United States Constitution or the laws of the United States. However, government officials performing "discretionary functions," are insulated from suit if their conduct did not violate a "clearly established statutory or constitutional right[ ] of which a reasonable person would have known." <u>Wilson v. Layne</u>, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999).

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Pearson v. Callahan</u>, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." <u>Pearson</u>, 555 U.S. at 231. It "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986). "Thus, so long as an official

reasonably believes that his conduct complies with the law, qualified immunity will shield that official from liability." Sharp v. Johnson, 669 F.3d 144, 159 (3d Cir. 2012) (citing Pearson, 555 U.S. at 244). Although qualified immunity is generally a question of law that should be considered at the earliest possible stage of proceedings, a genuine dispute of material fact may preclude summary judgment on qualified immunity. Giles v. Kearney, 571 F.3d 318, 325-26 (3d Cir. 2009).

A qualified immunity determination involves a two-pronged inquiry: (1) whether a constitutional or federal right has been violated; and (2) whether that right was "clearly established." Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part by Pearson, 555 U.S. at 236 (permitting federal courts to exercise discretion in deciding which of the two Saucier prongs should be addressed first). As stated, the court finds that Picarella failed to establish the violation of a constitutional right. Defendant Brouse simply could not have recognized that her actions in enforcing the prison contraband confiscation policy would violate "clearly established statutory or constitutional right[ ] of which a reasonable person would have known." Wilson, 526 U.S. at 609. Therefore, defendant Brouse is protected from liability by qualified immunity.

### C. Conversion Claim

Picarella contends that defendant Brouse committed the tort of conversion by interfering with his right to possess his personal property. Specifically, Picarella claims that defendant Brouse seized his property for her own use. Conversion is "an act of willful interference with the dominion or control over a chattel done

9

without lawful justification, by which any person entitled to the chattel is deprived of its use and possession." Baram v. Farugia, 606 F.2d 42, 43 (3d Cir. 1979).

Defendant Brouse contends that she is immune from liability with respect to this state law claim of conversion. (Doc. 85, at 16-17). State prison officials are immune from suit for those actions within the scope of their duties, except in instances in which the immunity has been specifically waived. See 1 PA. CONS. STAT. ANN. § 2310. The allegations of Picarella's second amended complaint do not fall under any one of the nine listed categories for which immunity has been waived by the Commonwealth of Pennsylvania.[2] See 42 PA. CONS. STAT. ANN. § 8522(b). As such, defendant Brouse is entitled to immunity on the state law claim and the motion will be granted in this regard.

In the exercise of caution, we also note that the issue on the merits of this conversion claim is whether defendant Brouse wrongfully exercised dominion or control over Picarella's property. As the court determined, defendant demonstrated that she did not wrongfully deprive Picarella of his property. Defendant Brouse confiscated Picarella's drawings because they were prohibited contraband in clear violation of prison policy. Picarella failed to present any evidence that defendant Brouse acted without lawful justification and failed to

---

[2] The nine categories for which sovereign immunity will not apply are: (1) vehicles in the possession or control of a Commonwealth party; (2) acts of health care employees of Commonwealth agency medical facilities or institutions; (3) the care, custody, or control of personal property; (4) a dangerous condition of Commonwealth agency real estate and sidewalks; (5) dangerous conditions of highways created by potholes or sinkholes; (6) the care, custody, or control of animals; (7) liquor store sales; (8) National Guard activities; and (9) toxoids and vaccines. See 42 PA. CONS. STAT. ANN. § 8522(b).

present any evidence that Brouse took the drawings for her own personal use. (Doc. 84-5, Picarella Deposition, at 19, 82:5-83:1).

For all of these reasons, the court will enter judgment in favor of defendant Brouse on the conversion claim.

## VI. Conclusion

The court will grant defendant's motion (Doc. 84) and enter summary judgment in her favor. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated: January 14, 2020